# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.: 3:25-CR-69 |
| | ) | JUDGE VARLAN |
| MICHAEL WILLIAM SPITZE | ) | |

## SENTENCING MEMORANDUM FOR THE UNITED STATES

The defendant has entered into a plea agreement of the kind specified in Federal Rules of Criminal Procedure 11(c)(1)(C). The United States and the defendant have both agreed the appropriate disposition of this case is a sentence of seventy (70) months imprisonment, followed by a term of supervised release as well as any lawful fines, special assessment fees, forfeiture and restitution imposed by the Court. The United States respectfully asks this Court to accept the specific sentence agreed to by the parties.

If a plea agreement includes a specific sentence, pursuant to Federal Rule of Criminal Procedure (FRCP) 11(c)(1)(C), the Court may accept the agreement if the Court is satisfied that: (1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form. *See* U.S.S.G. §6B1.2(c).

The 11(c)(1)(C) plea agreement of seventy (70) months imprisonment is the bottom of the guideline range calculated by the Presentence Investigative Report (PSR) writer, Robert Scott Queener. Neither party objects to the guideline calculation. [Docs. 23 & 24]. Therefore the 11(c)(1)(C) plea agreement satisfies FRCP 11(c)(1)(C) if this Court finds the PSR guideline range of 70-87 months to be the proper calculation. [Doc. 22, ¶ 98].

<u>**18 U.S.C. §3553(a) ANALYSIS**</u>

Analysis of the 18 USC § 3553(a) factors applied to the specific facts surrounding the case at bar warrant a stringent sentence of imprisonment. In this case it is important to consider the nature and circumstances of the offense, and deterrence for the defendant and other like-minded people. *18 USC § 3553(a)(1).*

Defendant pled to count one of a two-count indictment. Both counts charged the defendant with attempting to tamper with a victim. [Doc. 22, ¶¶ 2-4]. The facts of this case are straight forward and thoroughly laid out in the PSR. [*See* Doc. 22, ¶¶ 12-53]. In sum the defendant was asked by his adult son, Kyle Spitze (K. SPITZE), a defendant in his own violent and disturbing federal case, to contact and/or provide him with contact information for his victims. The defendant complied with his son's requests. The defendant contacted at least four (4) of K. SPITZE'S minor victims from around the world to various degrees of "tampering".

*NATURE AND CIRCUMSTANCES*

Section 3553(a) factors include the consideration of the nature and circumstances of the offense. Specifically in this case, the defendant inundated a 15-year-old minor victim (MV) of K. SPITZE with phone calls, money (approximately thirteen times), requested selfies to send to K.SPITZE, had the MV start her profile on Gettingout.com an application used to communicate with inmates; which allowed K.SPITZE to contact the minor victim approximately 51 times; requested information on what the minor victim had told the police; told her to destroy any evidence she might have against his son and requested she tell others to do the same. [Doc. 22, ¶¶ 12-35].

MV had been exploited by K. SPITZE, who used emotional mental tactics against her. K. SPITZE admitted in his plea agreement that: Multiple images of sexually explicit conduct by the

MV who was 15 at the time were in his phone.  One image shows the MV naked and kneeling on her bed with her hands covering her breasts. Another CP image shows her sitting in the same position with her hands again covering her breasts, and her vagina exposed. there is a small heart between her breasts, the word "crim"[1] and a swastika all written, in the MV's blood. The image also shows that she had cut her thigh to produce the blood to write the words. MV indicated the defendant had her produce the sexually explicit images for the purpose of creating visual child pornography depictions of MV for the defendant to upload to his Telegram Channel.  MV said she was threatened with doxing and swatting by the defendant if she did not comply with the defendant's demands. [Case 3:24-CR-25, Doc. 36, ¶ 4].   K. SPITZE displayed the images over the internet, to earn his stripes in the hate groups, "764" and HarmNation in which he was a member.  Although K. SPITZE and MV never met in person he held her captive, online.

The defendant victimized MV again. He also exploited the child knowing MV had been kicked out of her home and was living with a friend and her mom.  His tactic was psychological, pretending to care about MV, providing her with money and "fatherly" concern in hopes of persuading MV to destroy any evidence against K. SPITZE and keep her imprisoned by communicating with K. SPITZE.

During the communication between defendant and MV, he received the following email from MV: "micahel im only 16 years old kyle has been grooming and extorting me for months now, i wasnt lying about being kicked out and sexually assaulted imactually kicked out of my house and have been struggling really bad butmicahel kyle isnt a good person at all ive watched him first hand groom and extort other girls he claims he isnt a pedophile and that hes something called a hebephile is what he said he is, when melanie[2] tragically passed away.. he said he had killed her and posted photos of her all over the internet, everything everyones been saying is completely true im sorry i didnt tell you sooner i was so afraid of kyle but the authorities contacted me today i didnt give any information to them at all.
D: "Oh Jesus so you lied about your age and guys think you are older?"
MV: "no" "kyle knows my age" ….
D: "I shouldn't even be talking to you."

---

[1] One of K. SPITZE's monikers.
[2] Mother of K. SPITZE

3

"Be careful who you say anything to"
MV: "i know im sorry i didn't tell you sooner i apologize"
"ill refuse any talks with officers and anything?"
"kyles known since October"
"he was essentially holding me captive online"
"using my personal email information against me"
" information* not email" [Doc 22, ¶ 37].
Not even the above plea from his son's 15-year-old victim stopped him from continuing

his psychological barrage on the child. For another eight (8) days the defendant continued to

communicate and send MV money. Defendant tells MV: "just don't tell anyone where you are

getting $$ please" "Would not look right to many folks." [*Id.* at ¶ 38]. Even after this child told

the defendant about her fear of K. SPITZE, defendant offered MV to listen in on a telephone call

between him and K. SPITZE, asked again about deleting any criminal evidence of his son.

Defendant asked MV to send him "exactly" what the FBI had asked her and how she responded

to them.  MV texted that the FBI had asked her mother to identify photos of her.  Defendant

responded that she didn't need to cooperate if she didn't want to.  [*Id.* at ¶¶ 42-43].

Defendant then communicated with K. SPITZE on a video jail call where he held up a

sign about his communication with MV. [*Id.* at ¶ 43].  Defendant then told K. SPITZE: "You

don't have to worry about that one." [*Id.* at ¶ 44].

The same day after speaking to K. SPITZE, the defendant offers MV $100 per month

until she gets a job and requests another selfie for K. SPITZE. [*Id.* at ¶¶ 46, 48].   MV said no to

providing a selfie because she could no longer be in contact with K. SPITZE. [*Id.* at ¶ 48].

Defendant then tells the child to get a "burner phone" so that if her mom gives permission to FBI

to examine MV's phone for communication with he and K. SPITZE the communication would

not be on it. [*Id.*].

Tampering with a victim comes in many forms.  An adult who knowingly plays mind

games with a child victim who has already been sexually exploited and victimized is especially

egregious.  MV's, relief knowing her predator would no longer be able to contact or victimize her because he was in jail was short lived. The defendant immediately swooped in, feigning fatherly feelings towards MV to manipulate her.  The defendant circumvented MV's parents to initiate communication with the 15-year-old.  Defendant had zero concern for how his crimes of tampering with MV would revictimize MV.  Like father like son, both using MV's vulnerabilities and age for their own gains.

*SPECIFIC AND GENERAL DETERRENCE*

Section 3553 also guides the Court to consider the need for a sentence that affords adequate deterrence to criminal conduct. From the standpoint of sentencing, deterrence takes two forms: (1) specific deterrence, to deter similar crimes by the defendant who is being sentenced, and (2) general deterrence, to deter criminal actions by others who may contemplate committing similar offenses.

It is likely the defendant will argue that his crime was done out of love for his son. And this may be true. Loving his son does not justify his crimes against a child who has already been traumatized and sexually exploited by his son. Instead of supporting his son with love and support while going through the legal process, the defendant decided to commit further crimes against a child by doing the bidding of his adult son with a criminal history. The defendant is no stranger to the criminal legal system.  For over half his life the defendant's crimes all resulted from drug use.  Defendant admits to his drug use.  [Doc. 22, ¶ 92-3].  Defendant saw his son go down the same path doing nothing to stop it. And in fact, being complicit with his sons using and selling of drugs.  Defendant and K. SPITZE had recorded jail conversations wherein they spoke about K. SPITZES drug dealings. In one jail call, K. SPITZE shared with his father he was high on some type of drug he got while in jail.   While drug addiction may explain the string of poor

5

choices the defendant and his son have made, addiction does not justify the crimes against MV which both have committed. A seventy-month imprisonment followed by three (3) years on supervise release will hopefully send a message to the defendant that tampering with a victim especially of minor child who has been previously traumatized is serious!

A seventy-month sentence is also important in sending a general message to deter likeminded parents that tampering with a witness or victim in a criminal case against your child is serious. Parents, friends and loved ones who choose to tamper and/or obstruct a criminal investigation or trial for a defendant charged with a crime will result in grave consequences.

WHEREFORE, the United States requests this Court to impose the 11(c)(1)(C) plea agreement of seventy (70) month term of imprisonment on the defendant.  The United States believes that the defendant should have three (3) years on supervised release and any forfeiture, fines, special assessments and restitution this honorable Court deems fit.

Respectfully submitted this 7th day of May 2026.

FRANCIS MARION HAMILTON III
UNITED STATES ATTORNEY

By: *s/ Jennifer Kolman*
Jennifer Kolman
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
jennifer.kolman@usdoj.gov
GA Bar #427930

6